## In re The BRUNSWICK HOSPITAL CENTER, INC., Debtor.

### No. 92–CV–5723 (TCP).

United States District Court, E.D. New York.

July 14, 1993.

to support this proposition.

Harvey L. Goldstein, Kevin J. Nash, Finkel Goldstein Berzow & Rosenbloom, New York City, for appellant Creditors' Committee.

Burton D. Strumpf, Robert Owen Senzer, Fischbein Badillo Wagner & Itzler, New York City, for appellant Brunswick.

Robert Lewin, Anna Chou Lee, Stroock & Stroock & Lavan, New York City, for appellees.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

The Brunswick Hospital Center, Inc. ("Brunswick") and the Official Committee of Unsecured Creditors appointed in connection with Brunswick's pending Chapter 11 case (the "Creditors' Committee") have appealed from the Order of United States Bankruptcy Judge Robert John Hall dated October 15, 1992, which ruled *inter alia*, that a certain malpractice fund established by Brunswick before bankruptcy for the purpose of paying and defending malpractice claims was not property of Brunswick's bankruptcy estate. For the reasons that follow, the appeal must be dismissed and said Order of the Bankruptcy Court must be affirmed.

## BACKGROUND

Brunswick, an operator of a hospital and several related health care facilities in Amityville, New York, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 29, 1992 and thereafter has continued in possession and management of its property pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Long before filing for bankruptcy protection, Brunswick had made a business decision about how to protect itself against potential malpractice claims and liabilities.[1] It decided to forego extensive insurance coverage and opted instead to become self-insured through the vehicle of a trust fund (the "Trust Fund"), which was initially created pursuant to a trust agreement dated January 1, 1977, executed by and between Brunswick, as grantor, and Manufacturers Hanover Trust Company, as trustee (the "Trust Agreement").[2] The Trust Fund represents the source of revenue to pay pre-petition malpractice claims.

Appellees Joan Ann Burg and Joseph C. Motta are personal injury claimants who have sued Brunswick for medical malpractice. Pursuant to a stipulation and order of the Bankruptcy Court lifting the automatic stay, Burg commenced a lawsuit against Brunswick and others before United States District Court Judge Robert R. Merhige, Jr., who was sitting by designation as a visiting judge in the Eastern District of New York. Judge Merhige supervised a settlement of the case under which Burg agreed to compromise her claims against Brunswick upon the payment of $400,000 from the Trust Fund. Judgment was entered in accordance with the settlement on August 6, 1992. Burg argues that this settlement was for a fraction of the lawsuit's value, but that she agreed to this based on Brunswick's representation that it would support an application in the Bankruptcy Court to pay the

---

**1.** As of the date of the Chapter 11 filing, Brunswick was a party to at least fifty-four malpractice claims, which were in various stages of litigation involving potential total liabilities of millions of dollars.

**2.** The Bank of New York ("BONY") has since succeeded Manufacturers Hanover Trust as trustee under the Trust Agreement.

discounted claim from the Trust Fund. Indeed, Brunswick's special counsel in the medical malpractice case made an application to the Bankruptcy Court seeking authorization to release segregated funds held by BONY for the purpose of settling Burg's lawsuit.

Meanwhile, in New York State Supreme Court, Bronx County, Motta obtained a jury verdict against Brunswick in the amount of approximately $4 million. Motta entered judgment against Brunswick on August 5, 1992 and cross-moved the Bankruptcy Court seeking a determination that the Trust Fund is not property of Brunswick's bankruptcy estate. The aggregate of Burg and Motta's present claims exceed the amount of money in the Trust Fund, which presently totals about $3.2 million.

In the Bankruptcy Court, however, Brunswick, the Creditors' Committee, the Employees' Committee, and approximately eight individual malpractice claimants (who had not yet liquidated their claims) opposed the cross-motion of Motta and the application of Brunswick's medical malpractice counsel seeking a release of the Trust Fund.[3] They argued that the Trust Fund is property of Brunswick's estate and should be distributed on a pro-rata basis among malpractice claimants.

After hearing oral argument, the Bankruptcy Court found that: (i) a valid trust was created under New York law; (ii) medical malpractice claimants are the intended third party beneficiaries of the Trust Fund; (iii) Brunswick does not have legal title to the Trust Fund; (iv) Brunswick does not have an equitable interest in the Trust Fund because there would be no residual beneficial interest in the Trust Fund; and (v) Brunswick never had control or discretion over the Trust Fund. Therefore, the Bankruptcy Court held in an order dated October 15, 1992 that the Trust Fund is not property of Brunswick's bankruptcy estate.

Brunswick and the Creditors' Committee now appeal this holding of the Bankruptcy Court.

## DISCUSSION

■ Rule 8013 of the Federal Rules of Bankruptcy Procedure governs review by the District Court of determinations made by the Bankruptcy Court. Rule 8013 states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The Bankruptcy Court's conclusions of law, however, are reviewed *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990). "'Where there are pure questions of law or mixed questions of law and fact the District Court may conduct a *de novo* review.'" *In re Southold Development Corp.*, 134 B.R. 705, 708 (E.D.N.Y. 1991), quoting *In re Mader*, 108 B.R. 643, 644 (N.D.Ill.1989).

■ The bankruptcy appeal at bar presents a hybrid regarding the standard of review. The appeal raises questions of interpretation of a contract, the Trust Agreement, and while "[t]he interpretation of a contract is generally a question of law and subject to ... *de novo* review," *Network Pub. Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir.1990), this general proposition applies only when the language of the contract is unambiguous. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985). When the language of the contract is susceptible to more than one reasonable interpretation, the interpretation of the contract is an issue of fact. *Id.* Thus, in the appeal at bar, with respect to issues of contract interpretation, this Court's review must be *de novo*, but only to the extent that the language in the Trust Agreement is unambiguous. To the extent, however, that the Bankruptcy Court

**3.** Brunswick claims that although its medical malpractice counsel made the application seeking a release of money in the Trust Fund to settle the case with Burg, "he lacked authority to [enter into the settlement with Burg] absent Bankruptcy Court approval [and] ... [f]earing contempt if the motion was not made, [medical malpractice] counsel filed an application ..." Appellants' Joint Brief at 13, n. 7. Therefore, Brunswick now joins in the appeal at bar opposing said application.

made factual findings regarding the Trust Agreement and the implementation of the Trust Agreement,[4] those findings may be reviewed under the clearly erroneous standard. *See In re Southold Development Corp.,* 134 B.R. at 708. With this in mind, the Court now addresses the issues presented in the appeal at bar.

Section 541(a)(1) of the Bankruptcy Code provides a broad definition of "property of the estate." It states that the debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." While the scope of the definition of "property of the estate" under Section 541(a)(1) is intended to be broad, *United ed States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983), the question of whether a debtor has a beneficial interest in property of the estate is determined by referring to applicable state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914; 917–18, 59 L.Ed.2d 136 (1979).

As an initial matter, the applicable State law in the case at bar is the law of the State of New York. The Trust Agreement at paragraph the Fifteenth states that "[t]his Trust Agreement having been executed in New York State shall be governed by the laws of New York." Therefore, the law of New York will determine whether Brunswick had a beneficial interest in the Trust Fund.

The Court finds that a valid trust was created under New York law. A valid trust in New York requires four elements: (1) a designated trustee who is not the same person as the beneficiary; (2) a designated beneficiary; (3) clearly identifiable trust property; and (4) the actual delivery of the trust property by the settlor to the trustee with the intent of vesting legal title in the trustee. *Agudas Chasidei Chabad of U.S. v. Gourary,* 833 F.2d 431, 434 (2d Cir.1987).

Each of these elements was satisfied in 1977 such that Brunswick established a valid trust under New York law. First, the opening paragraph of the Trust Agreement states:

> AGREEMENT made as of 1st day of January, 1977, between THE BRUNSWICK HOSPITAL CENTER, INC. ("Provider") and MANUFACTURERS HANOVER TRUST COMPANY, 600 Fifth Avenue, New York, New York 10020 ("Tustees") [sic].

This clearly establishes that Manufacturers Hanover Trust Company would act as Trustee of the Trust Fund.[5] Second, the beneficiaries of the Trust Fund are the malpractice claimants as set forth in paragraph the Third, which states that the Trust Fund could be used only to satisfy malpractice and related claims.[6] Third, paragraph the First of the Trust Agreement states that:

> [t]he Provider hereby transfers to the Trustee the property listed on Schedule A, hereto annexed, which together with all appreciation, accumulated income, and subsequent additions shall be known as the "Trust Estate." The Trustee shall have legal title to all property in and be responsible for the proper administration and control of the Trust Estate as hereinafter set forth.

Schedule A lists cash of $273,000, and to date all accretions plus the initial principal

---

**4.** Indeed, the Bankruptcy Court made findings of fact, including *inter alia:* (1) that Brunswick intended to create a trust as a self-insurance fund in accordance with the Rules; (2) that there is no residual in the Trust Fund; and (3) that Brunswick has not invaded the Trust Fund in times of financial difficulty manifesting an intention that the Trust Fund be subject to restrictions as to use for the benefit of medical malpractice claimants only.

**5.** As stated above, BONY was substituted as Trustee by amendment to the Trust Agreement.

**6.** As described below, this is a point of contention by appellants who claim that the beneficiaries are not the malpractice claimants, but Brunswick itself. As set forth below, the Court finds that the Trust Agreement is ambiguous as to the named beneficiary, and therefore, it will not reverse the Bankruptcy Court's determination that medical malpractice claimants are the beneficiaries unless said determination was clearly erroneous. *See Rothenberg,* 755 F.2d at 1019.

equals approximately $3.1 million. Thus, the Trust Agreement clearly identifies the trust property, thereby satisfying the third element of a trust. Finally, in paragraph the First of the Trust Agreement, set forth above, Brunswick clearly delivered to the Trustee legal title to the trust property.

 Appellants contend that the beneficiaries of the Trust Fund are not the malpractice claimants, but Brunswick itself, and therefore, the Trust Fund is a self-settled trust under which Brunswick is both settlor and beneficiary. This argument is significant because if Brunswick is the intended beneficiary then arguably the Trust Fund should be part of Brunswick's bankruptcy estate.[7] Furthermore, if the Trust Fund is a self-settled trust fund, as appellants argue, then any possible restriction on alienation would be void as to Brunswick's creditors because under New York law, "[a] disposition in trust for the use of the creditor is void as against the existing or subsequent creditors of the creator." New York Estates, Powers and Trusts § 7-3.1(a); *See also Vanderbilt Credit Corp. v. Chase Manhattan Bank, N.A.,* 100 A.D.2d 544, 473 N.Y.S.2d 242, 245 (2d Dep't 1984); *State v. Coyle,* 171 A.D.2d 288, 575 N.Y.S.2d 975, 977 (3d Dep't 1991). In other words, if Brunswick is both the settlor and beneficiary, then pursuant to New York law, the Trust Fund must be part of Brunswick's estate and may not be excluded from the estate under § 541(c)(2) of the Bankruptcy Code.[8]

 In support of their argument, appellants point to several provisions in the Trust Agreement. First, appellants note that the preamble states that:

[p]rovider hereby establishes a Trust ('Trust'), to be held and administered herein provided solely for the *benefit* of

the Provider as a 'Grantor Trust' ... (emphasis added).

Second, appellants note that the preamble states further that "[n]o person other than [Brunswick] and the Trustee shall have any right, claim, or interest in the Trust by reason of this Agreement." Third, they point to paragraph the Third which states that the decision as to whether or not distributions shall be made from the Trust Fund rests solely with Brunswick, and that without proper certification by Brunswick, the Trustee can only use proceeds from the Trust Fund to pay administrative expenses. Finally, appellants argue that paragraph the Thirteenth of the Trust Agreement, which gives Brunswick the express right to terminate the Trust Fund at any time, demonstrates that Brunswick exercised dominion and control over the Trust Fund. Appellants argue that these provisions make it clear that the Trust Fund is a self-settled trust and should be recognized as property of Brunswick's bankruptcy estate.

Notwithstanding the foregoing provisions cited by appellants in support of their argument that Brunswick is the beneficiary under the Trust Agreement, this Court finds that other provisions in the Trust Agreement indicate that medical malpractice claimants are the intended beneficiaries. For instance, the preamble states that Brunswick established the Trust Fund as a "self-insurance fund in connection with its self-insurance program ..." Second, paragraph the Third provides that the Trustee holds the corpus of the Trust Fund for the purpose of meeting "malpractice or comprehensive general patient liability losses," and for expenses involved in administering the Trust Fund. Third, paragraph the Thirteenth provides that even if Brunswick were to decide to terminate the Trust

---

**7.** Appellants cite several cases demonstrating that the corpus of a self-settled trust is consistently recognized as property of the debtor's bankruptcy estate, including, *inter alia, In re Baldwin,* 142 B.R. 210 (Bankr.S.D.Ohio 1992).

**8.** Section 541(c)(2) of the Bankruptcy Code states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforce-

able under applicable nonbankruptcy law is enforceable in a case under this title.

Thus, a restriction on the transfer of property held in a trust that is enforceable under nonbankruptcy law, whether federal or state, is enforceable under Section 541(c)(2), and such property held in trust will not be included as "property of the estate" under Section 541(a)(1). *Patterson v. Shumate,* —— U.S. ——, —— – ——, 112 S.Ct. 2242, 2247–48, 119 L.Ed.2d 519 (1992).

Fund, the Trustee must retain a balance of the Trust Fund sufficient to satisfy malpractice claims incurred before termination. Finally, paragraph the First states that "[t]he Trustee shall have legal title to all property in ... the Trust Estate," and paragraph the Second states that "... in no event shall the Trustee loan or advance any of the funds from the Trust to [Brunswick] or any other person related to [Brunswick] by reason of common ownership or control." Thus, the several provisions in the Trust Agreement stating that the Trust Fund could be used only to satisfy malpractice and related claims indicate that medical malpractice claimants are the intended beneficiaries of the Trust Fund.

Therefore, an ambiguity exists as to whether the intended beneficiaries under the Trust Agreement are Brunswick or medical malpractice claimants, and as stated above, where the language of a contract is ambiguous, the interpretation of the contract is an issue of fact. *Rothenberg*, 755 F.2d at 1019. Thus, to the extent that the Bankruptcy Court made factual findings as to who are the intended beneficiaries under the Trust Agreement, appellants carry the burden of proving that the findings are clearly erroneous. *See In re Southold Development Corp.*, 134 B.R. at 708; *In re Eljay Jrs., Inc.*, 123 B.R. 961, 963 (S.D.N.Y.1991). "A showing that the Bankruptcy Court *could* have reached another conclusion on the evidence presented is not sufficient." *In re Eljay*, 123 B.R. at 963 (emphasis added).

■■■ Upon review of the record, this Court finds that the Bankruptcy Court's findings were not clearly erroneous. This Court agrees with Judge Hall's determination that despite certain language in the Trust Agreement indicating that Brunswick is the beneficiary, the surrounding circumstances and extrinsic evidence indicate an intent by the parties to designate medical malpractice claimants as beneficiaries of the Trust Fund.[9]

The circumstances surrounding Brunswick's decision to create the Trust Fund are clear. Brunswick entered into the Trust Agreement in order to qualify for favorable reimbursement treatment from Medicare. Certain rules and regulations of the Social Security Administration (the "Rules") require that in order to be reimbursed by Medicare a provider must maintain an "adequate insurance program." Rules § 2160. In particular, the Rules require that a provider participating in the Medicare program "protect itself against likely losses" by either purchasing insurance or maintaining a "self-insurance program" with an "independent fiduciary such as a bank, a trust company, or a private benefit administrator." Rules §§ 2160, 2162.7.B. Under the Rules, Brunswick would receive favorable treatment from Medicare if it used the Trust Fund solely to pay malpractice claimants. *Id.* This was a significant factor, if not the only factor, in Brunswick's decision to create the Trust Fund.

Given these circumstances surrounding the formation of the Trust Fund, this Court may not say that the Bankruptcy Court was clearly erroneous in finding that the intended beneficiaries are medical malpractice claimants. While this Court agrees with appellants' statement that Brunswick was not obligated by law to maintain the Trust Fund, it is clear that if Brunswick did not maintain such a fund it could not participate in the Medicare program. Thus, Brunswick entered into the Trust Agreement, which specifically refers to the Rules and participation in the Medicare program and states that the funds were "to meet malpractice or comprehensive general patient liability losses," with the intent of qualifying for favorable reimbursement treatment from Medicare.

Other surrounding circumstances in the record confirm this Court's view that the

---

**9.** The Bankruptcy Court properly used extrinsic evidence to determine the intent of the parties, for where a court determines that the words of a trust instrument are ambiguous it may properly resort to extrinsic evidence. *See Mercury Bay*

*Boating v. San Diego Yacht,* 76 N.Y.2d 256, 557 N.Y.S.2d 851, 857, 557 N.E.2d 87, (Ct.App.1990); *Gross v. Cizauskas,* 53 A.D.2d 969, 385 N.Y.S.2d 832, 833 (3rd Dep't. 1976).

Bankruptcy Court's determination was not clearly erroneous: appellants have conceded that since the formation of the Trust Fund, the Trustee has segregated the Trust Fund for satisfaction of malpractice claims, and Brunswick has never invaded the Trust Fund for purposes other than to pay for malpractice claims, even in times of financial difficulty (Appellants' Joint Reply Brief at 10, n. 8); the unaudited balance sheet dated June 30, 1991 that Brunswick filed with its bankruptcy petition lists "[a]ssets whose use is limited under malpractice funding arrangement—held by the Bank of New York, as Trustee"; and Brunswick's Schedule B of Personal Property that it filed with the Bankruptcy Court lists "[t]rust fund established to compensate unliquidated medical malpractice claims." These factors further indicate that the intended beneficiaries of the Trust Fund were medical malpractice claimants.

 Appellants argue that under the Trust Agreement, Brunswick retained the express right to terminate the Trust Fund at any time, and that this ability to revoke a trust is a common characteristic of a self-settled trust. Pursuant to paragraph the Thirteenth, however, even if Brunswick were to exercise its right to terminate the Trust Fund and end its participation in the Medicare program, no funds from the Trust Fund could be disbursed to Brunswick until the Trustee satisfied all outstanding malpractice claims. Thus, to the extent that Brunswick retained some residual interest in the Trust Fund, that interest alone ordinarily would be included in Brunswick's bankruptcy estate.[10] Appellants concede, however, that the total claims of Burg and Motta exceed the amount in the Trust Fund. Therefore, any residual interest in the Trust Fund retained by Brunswick has been wiped out by the claims of Burg and Motta.

**10.** Indeed, a settlor of a trust may be one of several beneficiaries of said trust. Restatement (Second) of Trusts § 114 (1959). Thus, it is possible that Brunswick is one of several beneficiaries of the Trust Fund. As discussed above, however, medical malpractice claimants are also beneficiaries, and the beneficial interest retained by Brunswick is the amount left in the

## CONCLUSION

In sum, the Trust Fund is not part of Brunswick's bankruptcy estate under § 541(a)(1) for the following reasons: Brunswick transferred legal title to all property in the Trust Fund to the Trustee; the Trust Agreement and the Rules provide that the corpus of the Trust Fund could be used to pay medical malpractice claims only; Brunswick entered into the Trust Agreement with the intent of participating in the Medicare program; and any residual beneficial interest held by Brunswick is nullified by the claims of Burg and Motta.[11] Therefore, the Order of the Bankruptcy Court dated October 15, 1992 is affirmed and appellants' bankruptcy appeal must be and the same hereby is dismissed.

SO ORDERED.

Trust Fund after all malpractice claimants are paid, which in this case is nothing.

**11.** In light of these determinations, it is not necessary for this Court to address the parties' respective arguments regarding the applicability of Section 541(c)(2) of the Bankruptcy Code.